# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES | CRIMINAL ACTION |
| v. | |
| MIGUEL ORTIZ, also known as "MIGUELITO," "Miguel ORTIZ ROSADO," "MIGUEL ROSADO ORTIZ," "MIGUELINE," and "TONTO" | NO. 11-251-08 |

DuBois, J.                                                        July 3, 2018

## M E M O R A N D U M

### I.    INTRODUCTION

Presently before the Court is the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion") filed *pro se* by defendant Miguel Ortiz ("defendant"). For the reasons set forth below, defendant's § 2255 Motion is dismissed and denied without an evidentiary hearing.

### II.    BACKGROUND

#### A.    Facts and Procedural History

Defendant's sentence and conviction arise from the activities of a drug trafficking group ("DTG") led by Nelson Rodriguez operating out of a warehouse at 3075 Jasper Street in Philadelphia, Pennsylvania (the "Jasper Street Warehouse"). Between the fall of 2008 and March 30, 2011, defendant, along with one other individual, Jesus Ramirez-Ortega, supplied the DTG with over 300 kilograms of cocaine. The DTG purchased the cocaine from defendant on consignment, sold the cocaine to local drug dealers at the Jasper Street Warehouse and other locations, and then paid defendant from the proceeds.

Following an investigation by the Drug Enforcement Agency, a Grand Jury in the Eastern District of Pennsylvania returned a ten-count Fourth Superseding Indictment against defendant and Ramirez-Ortega on February 27, 2013.[1] Count One of that Indictment charged conspiracy to distribute five or more kilograms of cocaine in violation of 2l U.S.C. § 846. Counts Two and Three charged distribution of five or more kilograms of cocaine in violation of 2l U.S.C. §§ 84l(a)(l), (b)(1)(A), and Count Four charged distribution of five or more kilograms of cocaine within 1,000 feet of a school in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 18 U.S.C. § 860(a). Counts Five through Ten charged money laundering in violation of 18 U.S.C. § 1957.

On April 9, 2013, defendant proceeded to trial before a jury. On April 26, 2013, defendant was convicted on one count of conspiracy to distribute more than five kilograms of cocaine, two counts of distribution of more than five kilograms of cocaine, one count of distribution of more than five kilograms of cocaine within 1,000 feet of a school, and three counts of money laundering—Counts One through Six and Nine of the Fourth Superseding Indictment. On October 9, 2013, the Court entered a Preliminary Order of Forfeiture against defendant pursuant to 21 U.S.C. § 853. At sentencing on October 23, 2013, defendant faced a recommended sentence of life imprisonment under the U.S. Sentencing Guidelines ("Guidelines"). *United States v. Ortiz*, 654 F. App'x 564, 567 (3d Cir. 2016). The Court varied downward and imposed a sentence of 360 months' imprisonment, three years' supervised release, a fine of $25,000, and a $600 special assessment.

### B. Government's Video Footage from Pole Cameras

As discussed below, defendant's § 2255 Motion is premised, in substantial part, on the admission of testimony from two DEA agents, David Pedrini and Paul Gimbel, at trial. Prior to trial, defendant sought to preclude Pedrini and Gimbel from testifying as to footage they had

---

[1] Ramirez-Ortega was not involved in the proceedings addressed in this Memorandum.

viewed from two video cameras installed by the DEA on utility poles near the Jasper Street Warehouse ("pole cameras"). *United States v. Ortiz*, No. 11-251-08, 2013 U.S. Dist. LEXIS 2939, at *3 (E.D. Pa. Jan. 7, 2013). Throughout the DEA investigation, Pedrini and Gimbel reviewed the pole camera footage and recorded their observations in written investigative reports. *Id.* at *4. In their reports, Pedrini and Gimbel stated that they observed defendant delivering cocaine to the Jasper Street Warehouse on several occasions. *Id.* After the pole cameras were removed on April 11, 2011, however, DEA personnel discovered that the footage from January 12, 2011, to February 26, 2011, was missing.

On May 11, 2012, defendant filed a Motion to Preclude Testimony from Pedrini and Gimbel regarding the contents of the missing footage. 2013 U.S. Dist. LEXIS 2939, at *3. At the direction of the Court, the Government attempted to recover the missing footage, but was ultimately unsuccessful. *Id.* In a Memorandum & Order dated January 7, 2013, this Court denied defendant's Motion. The Court concluded, in part, that the Government had not acted in bad faith and that the testimony by the agents was not barred by Federal Rule of Evidence 1002, the Best Evidence Rule. *Id.* at *10. However, to avoid the introduction of hearsay testimony, the Court ruled that (1) the agents' testimony would be limited to "their own observation[s] of the now-missing camera footage" and "those sections of their respective reports which were derived entirely from their personal observation[s]" and (2) neither agent was permitted to "testify regarding any part of his report which was based, in whole or in part, on any source other than his personal observation" of the missing footage." *Id.* at *12, 18-19.

### C. Direct Appeal

Following his conviction, defendant timely appealed to the United States Court of Appeals for the Third Circuit, where he raised the same challenge to the admission of testimony

from Pedrini and Gimbel that he raises in his § 2255 Motion. Defendant argued, in part, that the agents' testimony was "infected by hearsay" and was unfairly prejudicial under Federal Rule of Evidence 403. *Ortiz*, 654 F. App'x at 568. On July 15, 2016, the Third Circuit affirmed defendant's conviction and sentence, rejecting defendant's argument. *Id.* The Third Circuit reasoned the agents' testimony was not hearsay because this Court had ensured "that the agents would testify only to their 'personal observations.'" *Id.* at 569. Likewise, the Third Circuit reasoned that the agents' testimony was not unfairly prejudicial because they "were subject to cross-examination like any other eyewitness." *Id.* Defendant did not argue on appeal that the Government had impermissibly withheld exculpatory material under *Brady v. Maryland*, 373 U.S. 83 (1963), and "agree[d] that the loss of the recordings was accidental." *Id.* at 566.

Defendant's conviction became final on October 13, 2016, when the time for filing a petition for writ of certiorari in the United States Supreme Court expired. *See Clay v. United States*, 537 U.S. 522, 527 (2003). On September 22, 2017, defendant timely filed the present § 2255 Motion. The Government filed its Response to Defendant's Motion Under 28 U.S.C. Section 2255 to Vacate, Set Aside or Correct Sentence on January 25, 2018, and defendant filed a Reply to the Government's Response on May 23, 2018. Defendant's Motion is ripe for decision.

### III. LEGAL STANDARD

#### A. *Brady* Violation

In his § 2255 Motion, petitioner argues, in part, that the Government withheld exculpatory evidence in violation of *Brady v. Maryland,* 373 U.S. 83 (1963). Under *Brady*, "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment." 373 U.S. at 87. To establish a *Brady* violation, the defendant must show that "(1) evidence was suppressed; (2) the evidence

4

was favorable to the defense; and (3) the evidence was material to guilt or punishment." *Simmons v. Beard*, 590 F.3d 223, 233 (3d Cir. 2009). Under the second prong, "the mere possibility" that lost evidence might have included material favorable to the defense, "without more, is insufficient" to establish a *Brady* violation. *United States v. Ramos*, 27 F.3d 65, 71 (3d Cir. 1994). A court may not "infer the existence of *Brady* material based upon speculation alone." *Id.* Further, under the third prong, "[e]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985).

### B. Ineffective Assistance of Counsel

Defendant also argues that his counsel was ineffective under the requirements of the Sixth Amendment. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

The *Strickland* standard requires a two-part inquiry. "First, the defendant must show that counsel's performance was deficient" by showing that it fell "below an objective standard of reasonableness," including "[p]revailing norms of practice." *Id.* at 687-88. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Counsel cannot be ineffective for failing to raise a claim without merit or failing to object where there is no underlying error. *Thomas v. Horn*, 570 F.3d 105, 121 n.7 (3d Cir. 2009).

5

"Second, the defendant must show that [counsel's] deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. With respect to the prejudice prong, defendant is required to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" is one that is "sufficient to undermine confidence in the outcome." *Id.* However, "a criminal defendant alleging prejudice must show 'that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) (quoting *Strickland*, 466 U.S. at 687). An "analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." *Id.*

### C. Procedural Default

A motion under 28 U.S.C. § 2255 cannot be used as a substitute for a direct appeal. *Gov't of the Virgin Islands v. Nicholas*, 759 F.2d 1073, 1074 (3d Cir. 1985). Accordingly, claims that could have been, but were not, raised on direct appeal, are procedurally defaulted and may not be raised in collateral proceedings under § 2255. *United States v. Frady*, 456 U.S. 152, 164–65 (1982); *United States v. Essig*, 10 F.3d 968, 978–79 (3d Cir. 1993). Claims for ineffective assistance of counsel, however, need not be raised on direct appeal in order to be raised in collateral proceedings. *Massaro v. United States*, 538 U.S. 500, 504 (2003).

Procedural default may be excused if a defendant can demonstrate cause and prejudice for the default or a miscarriage of justice. *Frady*, 456 U.S. at 168; *cf. Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A defendant may demonstrate cause where "some objective factor external to the defense . . . impeded counsel's efforts to comply with the . . . procedural rule." *Slutzker v. Johnson*, 393 F.3d 373, 381 (3d Cir. 2004) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). "Ineffective assistance of counsel that rises to the level of a Sixth Amendment

6

violation constitutes cause for a procedural default." *Hodge v. United States*, 554 F.3d 372, 379 (3d Cir. 2009) (citing *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)). Defendant may establish prejudice by showing that the alleged error worked to the defendant's "actual and substantial disadvantage." *Frady*, 456 U.S. at 170.

To show a fundamental miscarriage of justice, a defendant must present new evidence that he is actually innocent of the crime for which he has been convicted. *Cristin v. Brennan*, 281 F.3d 404, 412 (3d Cir. 2002). To establish the requisite probability of actual innocence, the defendant must show that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

## IV. DISCUSSION

In his § 2255 Motion and Reply to the Government's Response, defendant states that he raises "several grounds for relief." Doc No. 635 at 3. As it must, the Court construes *pro se* defendant's § 2255 Motion and Reply liberally, *United States ex rel. Montgomery v. Brierley*, 414 F.2d 552, 555 (3d Cir. 1969), and concludes that defendant raises seven grounds for relief:

1. The Government withheld exculpatory material in violation of *Brady v. Maryland* by failing to provide defendant with the lost pole camera footage, Doc. No. 635 at 6, 9-18;
2. The agents' testimony was improperly admitted in violation of the Federal Rules of Evidence, Doc. No. 635 at 8-9;
3. Defendant was denied effective assistance of counsel because "because any attempt to crossexamine [*sic*] the Agents' testimony would be futile due to the destruction of *Brady* material," Doc. No. 635 at 26;
4. Counsel was ineffective for failing to use a real estate settlement sheet to impeach a government witness, Doc. No. 635 at 51;
5. Counsel was ineffective for failing to argue defendant's sentence violated the Supreme Court decision *Alleyne v. United States*, 570 U.S. 99, 99 (2013), Doc. No. 644 at 29-30;
6. Counsel was ineffective for failing to object to the "multiplicitous count[s]" in the Fourth Superseding Indictment, Doc. No. 644 at 31-33; and,
7. Defendant's forfeiture order is without "validity" following the "intervening change in law" in the Supreme Court decision *Honeycutt v. United States*, 137 S. Ct. 1626 (2017), Doc. No. 644 at 34-37.

7

Defendant has also requested an evidentiary hearing. For the reasons that follow, the Court dismisses and denies all of defendant's claims without an evidentiary hearing.

### A. Ground One: The Government Withheld Exculpatory Material in Violation of *Brady v. Maryland* by Failing to Provide Defendant with the Lost Pole Camera Footage

In his first ground for relief, defendant argues that "that the Prosecution's failure to recover video evidence of exculpatory 'value' to Mr. Ortiz, denied him Due Process" under *Brady v. Maryland.* Doc. No. 635 at 6. The Court rejects defendant's argument because defendant has procedurally defaulted this claim by failing to raise the claim at trial or on appeal.

It is well established that a "collateral challenge may not do service for an appeal" and "to obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both" cause and prejudice. *Frady*, 456 U.S. at 165, 167. Defendant failed to raise his *Brady* claim either at trial or on appeal and agreed with the Government on appeal "that the loss of the recordings was accidental." *Ortiz*, 654 F. App'x at 566. Consequently, defendant has procedurally defaulted this claim.

Defendant argues that the procedural default may be excused by ineffective assistance of counsel, stating that he did not raise the issue on appeal because "counsel informed movant issue is best raised on 2255." Doc. No. 635 at 8. The Court rejects this argument. It is well established that counsel cannot be ineffective for failing to object where there is no underlying error. *Thomas v. Horn*, 570 F.3d 105, 121 n.7 (3d Cir. 2009). Defendant has not established there was an underlying violation of *Brady* because he has not shown that the lost pole camera footage was exculpatory. A court may not "infer the existence of *Brady* material based upon speculation alone." *Ramos*, 27 F.3d at 71. Defendant offers nothing more than conclusory allegations that the lost pole camera video was exculpatory. This is insufficient to establish a *Brady* violation. *See Arizona v. Youngblood*, 488 U.S. 51, 57 (1988) ("[U]nless a criminal

8

defendant can show bad faith on the part of the police, failure to preserve *potentially* useful evidence does not constitute a denial of due process of law.") (emphasis added) (citing *California v. Trombetta*, 467 U.S. 479, 486 (1984)).[2] Consequently, counsel could not be ineffective where defendant has failed to establish an underlying violation.[3]

### B. Ground Two: The Agents' Testimony Was Improperly Admitted in Violation of the Federal Rules of Evidence

In his second ground for relief, defendant argues that admission of testimony from Pedrini and Gimbel violated Federal Rule of Evidence 403 because "its probative value was substantially outweighed by the danger of unfair prejudice by confusing and misleading the jury." Doc. No. 435 at 8. The Court rejects defendant's argument for two reasons.

First, claims for violations of the Federal Rules of Evidence are ordinarily not cognizable in habeas proceedings. *Lesko v. Owens*, 881 F.2d 44, 51-52 (3d Cir. 1989). Only those errors that "constitute[] a failure to observe that fundamental fairness essential to the very concept of justice" may be raised on a § 2255 motion. *Id.* at 51 (internal quotation marks omitted); *see also Davis v. United States*, 417 U.S. 333, 346 (1974). Admission of prejudicial evidence in violation of Rule 403 may be cognizable in a habeas proceeding only where "the probative value of such evidence, though relevant, is greatly outweighed by the prejudice to the accused from its admission." *Lesko*, 881 F.2d at 52 (quoting *Bisaccia v. Attorney Gen. of New Jersey*, 623 F.2d 307, 313 (3d Cir. 1980)). In this case, the agents' testimony was not unfairly prejudicial because any prejudice to defendant was limited by defendant's ability to cross-examine the agents and the

---

[2] Defendant also argues at length that his rights under *Brady* were "clearly established" at the time of the events in this case. Doc. No. 635 at 18-21. The cases cited by defendant, however, address only the doctrine of qualified immunity, an issue that is irrelevant to defendant's Motion.
[3] In his Reply, Doc No. 644 at 5, 20, defendant recasts his *Brady* claim as one for ineffective assistance of counsel for counsel's failure to raise the *Brady* claim at trial or on appeal. This claim must fail for the reasons stated above: counsel cannot be ineffective where there was no underlying *Brady* violation.

availability of the agents' reports to the defense for examination. *United States v. Ortiz*, 654 F. App'x at 568-69. Thus, there was no violation of Rule 403 and no error amounting to a "failure to observe that fundamental fairness essential to the very concept of justice."

Second, a motion under § 2255 "may not be employed to relitigate questions which were raised and considered on direct appeal." *United States v. DeRewal*, 10 F.3d 100, 105 n.4 (3d Cir. 1993) (quoting *Barton v. United States*, 791 F.2d 265, 267 (2d Cir. 1986)). Defendant already challenged the admission of the testimony of Pedrini and Gimbel on appeal, and the Third Circuit ruled against defendant. *Ortiz*, 654 F. App'x at 568-69. Thus, defendant may not raise this issue again under § 2255.[4]

### C. Ground Three: Defendant Was Denied Effective Assistance of Counsel Due to the Government's Failure to Provide Lost Video from the Pole Cameras

In his third ground for relief, defendant asserts that trial counsel was constitutionally ineffective "because any attempt to cross-examine the Agents' testimony would be futile due to the destruction of *Brady* material that was exculpatory." Doc. No. 635 at 26.

The Court rejects defendants' argument for two reasons. First, defendant's argument focuses on the circumstances surrounding counsel's performance rather than on the performance itself. To state a claim for ineffective assistance of counsel, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Defendant has not identified any errors allegedly made by counsel, but argues only that the circumstances made counsel's representation more difficult.

---

[4] In his Reply, defendant restates this claims a one that counsel was ineffective for failing to argue that the admission of the agents' testimony violated his due process rights. Doc. No. 644 at 13. The Court rejects this argument. As stated above, there was no violation of either the Federal Rules of Evidence or defendant's constitutional rights in admitting the agents' testimony. Counsel, consequently, cannot be ineffective for having failed to object.

Second, assuming *arguendo* that this claim may be construed as arguing that counsel erred in failing to raise a *Brady* claim at trial or on appeal, the Court has already rejected that argument for the reasons stated above. *See supra* note 3.

### D. Ground Four: Counsel Was Ineffective for Failing to Use a Real Estate Settlement Sheet to Impeach a Government Witness

In the final ground for relief raised in his § 2255 Motion, defendant contends that counsel was ineffective for failing to impeach a government witness with a real estate settlement sheet that purportedly shows the sale of defendant's home on May 2, 2007. Doc. No. 635 at 51. Defendant contends that the settlement sheet would have shown that the witness's testimony that Ortiz was living at that property in 2008 was false. *Id.*

The Court rejects defendant's argument because defendant has not established that he was prejudiced by counsel's failure to impeach the witness using the settlement sheet. In determining whether defendant was prejudice by counsel's alleged errors, the Court "must consider the totality of the evidence before the judge or jury. . . . Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect." *Strickland*, 466 U.S. at 695-96. Any error committed by counsel with respect to the settlement sheet had such an isolated, trivial effect. The settlement sheet would have done little to undermine the remainder of the witness's testimony and would have done nothing to challenge the other evidence presented by the Government, including the testimony from Pedrini and Gimbel, the tally sheets showing payments to defendant, and the testimony of other persons involved in the Rodriguez trafficking group. The Court thus rejects this claim for relief.

Finally, in his Reply, defendant inconsistently frames this claim as one for ineffective assistance of counsel and as one for the Government's "knowing present[ation] of false

11

testimony." Doc. No. 644 at 26. Any claim for the knowing use of false testimony fails because defendant has not shown that "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976). Defendant has failed to make this showing for the same reasons that he failed to establish *Strickland* prejudice above: where defendant lived during the conspiracy was immaterial in light of the other evidence presented by the government. The Court rejects this claim for relief.

### E. Ground Five: Counsel Was Ineffective for Failing to Argue Defendant's Sentence Violated *Alleyne v. United States*

In his Reply, defendant argues that trial counsel was ineffective for not objecting that his sentence violated the Supreme Court decision *Alleyne v. United States*, 570 U.S. 99 (2013). In *Alleyne*, the Supreme Court held that "'facts that increase the prescribed range of penalties to which a criminal defendant is exposed' are elements of the crime" that must be found by a jury beyond a reasonable doubt. *Id.* at 111 (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)). However, where a finding of fact does not alter the mandatory minimum or maximum punishment imposed by statute, the sentencing judge retains "broad discretion . . . to select a sentence within the range authorized by law." *Id.* at 170. Defendant argues that because the "jury verdict was only [for] 5 kilograms of cocaine," Doc. No. 344 at 29, counsel was ineffective for not objecting to the Court's imposition of a sentence for "at least 300 kilograms of cocaine" pursuant to the Sentencing Guidelines then in effect. Sentencing Comments at 2.

The Court rejects defendant's argument. The decision in *Alleyne* applies only to findings of fact that alter the statutorily mandated range of punishments. Courts are not limited to facts found by the jury in selecting a punishment within that range. In this case, the jury expressly found that defendant had distributed or aided and abetted the distribution of at least five kilograms of cocaine within 1,000 feet of a school, in violation of 21 U.S.C. §§ 841(a)(1) and

12

860(a). Those sections impose a punishment range of seven years to life for the offenses for which defendant was convicted. The Court's imposition of 360 months was well within that range. The jury found sufficient facts to support the sentence imposed by the Court. The Court thus rejects this claim for relief.

### F. Ground Six: Counsel Was Ineffective for Failing to Object to the "Multiplicitous Counts" in the Indictment

In the next ground for relief defendant contends that counsel was ineffective for failing to object to the "multiplicitous counts" of the Fourth Superseding Indictment for money laundering.

The Court rejects defendant's argument. A multiplicitous indictment "charges the same offense in two or more counts and may lead to multiple sentences for a single violation, a result prohibited by the Double Jeopardy Clause" of the Fifth Amendment. *United States v. Pollen*, 978 F.2d 78, 83 (3d Cir. 1992). To determine whether an indictment is multiplicitous, a court "must ascertain the allowable unit of prosecution under the relevant statutory provision." *Id.* at 85. Where the indictment includes multiple charges under the same statutory provision, the "test" is whether that provision prohibits "individual acts" rather than "the course of action which they constitute." *Blockburger v. United States*, 284 U.S. 299, 302 (1932). If the relevant statute prohibits individual acts, "then each act is punishable separately," and an indictment is not multiplicitous for charging each violation of the statute. *Id.*

The statute under which defendant was convicted for money laundering prohibits each individual act of money laundering: it proscribes a "monetary transaction in criminally derived property of a value greater than $10,000." 18 U.S.C. § 1957(a). Under § 1957, a "monetary transaction" is "the deposit, withdrawal, transfer, or exchange . . . of funds or a monetary instrument." *Id.* § 1957(f). The text of the statute makes clear that each "monetary transaction"

13

undertaken with criminally derived property is separately punishable and may be separately charged in the Indictment.

Defendant engaged in three such monetary transactions: the purchase or redemption of gambling chips with funds derived from defendant's drug trafficking on three separate dates at two different casinos, each with different amounts. Each of those transactions constituted distinct violations of the statute. Thus, the Fourth Superseding Indictment was not multiplicitous, and the Court denies this ground for relief. *Accord United States v. Parlato*, No. 15-cr-149, 2017 U.S. Dist. LEXIS 107302, at *24 (W.D.N.Y. Feb. 13, 2017) (finding no multiplicity under § 1957 where the counts arose from distinct monetary transactions).

### G. Ground Seven: Defendant's Forfeiture Order Is Invalid Following the Supreme Court Decision *Honeycutt v. United States*

In his final ground for relief, defendant argues that the Court's Preliminary Order of Forfeiture pursuant to 21 U.S.C. § 853 is invalid under the Supreme Court decision *Honeycutt v. United States*, 137 S. Ct. 1626 (2017). In that decision, the Supreme Court held that § 853 limited "forfeiture to tainted property acquired or used by the defendant" personally, and consequently, "foreclose[d] joint and several liability for co-conspirators." *Id.* at 1633. Based on that holding, the Supreme Court concluded that the defendant in that case could not be jointly and severally liable for funds illegally acquired by a co-conspirator. *Id.* at 1635.

The Court rejects the applicability of *Honeycutt* to this case pursuant to the Supreme Court decision *Teague v. Lane*, 489 U.S. 288 (1989). In *Teague*, the Supreme Court held that "new . . . rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced," including cases under collateral review. *Id.* at 311. A rule is new if it "was not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague*, 489 U.S. at 301 (emphasis in original). A new rule may apply

14

"retroactively in a collateral proceeding only if (1) the rule is substantive or (2) the rule is a 'watershed rul[e] of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." *Whorton v. Bockting*, 549 U.S. 406, 416 (2007) (alteration in original) (quoting *Teague*, 489 U.S. at 311). A new rule is "substantive" and therefore applies retroactively to collateral proceedings if "it alters the range of conduct or the class of persons that the law punishes." *Schriro v. Summerlin*, 542 U.S. 348, 353 (2004).

The Court concludes that the rule in *Honeycutt* is new. Along with the First, Second, Fourth, and Seventh Circuits, the Third Circuit held prior to *Honeycutt* that § 853 permitted joint and several liability for co-conspirators for the forfeiture of illegally acquired funds. *United States v. Pitt*, 193 F.3d 751, 765 (3d Cir. 1999). Those courts reached that conclusion based on a reading of § 853 in the absence of binding Supreme Court precedent on that issue. *E.g.*, *United States v. McHan*, 101 F.3d 1027, 1043 (4th Cir. 1996). The rule in *Honeycutt* was not dictated by existing precedent and constituted a new rule. Because *Honeycutt* was decided on June 5, 2017, after defendant's conviction became final, it is applicable to defendant's case only if it is subject to the "substantive" or "watershed rule" exceptions to *Teague*.

Neither of those exceptions applies to this case. The rule in *Honeycutt* is not substantive because it did not alter the range of conduct punished by federal law, but decided only whether joint and several liability could be imposed as a consequence of that conduct. Likewise, the *Honeycutt* rule is not a "watershed rule." The Supreme Court has stated that the decision in *Gideon v. Wainwright*, 372 U.S. 335 (1963), "illustrate[s] the type of rule coming within the exception" to *Teague* for watershed rules. *Saffle v. Parks*, 494 U.S. 484, 495 (1990). The rule in *Honeycutt* merely clarifies the interpretation of a criminal forfeiture statute, falling well short of the *Gideon* benchmark. *Teague* thus bars application of *Honeycutt* to this case. The Court

15

therefore denies this ground for relief. *Accord United States v. Georgiou,* No. 09-cr-88, 2018 U.S. Dist. LEXIS 102662, at *12 (E.D. Pa. June 19, 2018); *United States v. Filice*, No. 13-cr-8-11, 2018 U.S. Dist. LEXIS 85265, at *9 (E.D. Ky. May 22, 2018).

### H. Request for an Evidentiary Hearing

Defendant requests that the Court hold an evidentiary hearing with respect to his claims. Under 28 U.S.C. § 2255, "the question of whether to order a hearing is committed to the sound discretion of the district court." *Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989). In exercising that discretion, "the [C]ourt must order an evidentiary hearing to determine the facts unless the motion and files and records of the case show conclusively that the movant is not entitled to relief." *Id.*; *see also United States v. Day*, 969 F.2d 39, 41–42 (3d Cir. 1992). The Court denies defendant's request for an evidentiary hearing because the record conclusively establishes that he is not entitled to the relief sought in his § 2255 Motion.

### V. CONCLUSION

For the foregoing reasons, the Court dismisses and denies defendant's *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody without an evidentiary hearing. A certificate of appealability will not issue because reasonable jurists would not debate whether the petition states a valid claim of the denial of a constitutional right or the propriety of this Court's procedural rulings with respect to petitioner's claims. *See* 28 U.S.C. § 2253(c)(2) (providing that a certificate of appealability will issue "only if the applicant has made a substantial showing of the denial of a constitutional right"); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). An appropriate order follows.