**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES** | **CRIMINAL ACTION** |
| v. | |
| **MIGUEL ORTIZ, also known as "MIGUELITO," "Miguel ORTIZ ROSADO," "MIGUEL ROSADO ORTIZ," "MIGUELINE," and "TONTO"** | **NO. 11-251-08** |

**DuBOIS, J.**                                                                                                  **February 16, 2021**

# M E M O R A N D U M

## I.     INTRODUCTION

Defendant, Miquel Ortiz, is an inmate at the Federal Detention Center in Loretto, Pennsylvania ("FCI-Loretto"). Presently before the Court is Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) ("Motion for Compassionate Release"). Defendant argues compassionate release is warranted based on his medical conditions in light of the COVID-19 pandemic. For the reasons that follow, the Motion is denied.

## II.    BACKGROUND

Defendant's conviction arises out of his involvement in the activities of a drug trafficking group. Gov't's Resp. 3. Defendant supplied the drug trafficking group with over 300 kilograms of cocaine, worth millions of dollars, between the fall of 2008 and March 30, 2011. *Id.* at 2. On April 26, 2013, defendant was found guilty on one count of conspiracy to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. § 846; two counts of distribution of five or more kilograms of cocaine, in violation of 21 U.S.C. § 846; one count of distribution of five or more

kilograms of cocaine within 1,000 feet of a school, in violation of 21 U.S.C. § 860; and two counts of money laundering, in violation of 18 U.S.C. § 1957, following a jury trial. *Id.* at 2.

Defendant was sentenced by the Court on October 23, 2013 to, *inter alia*, 360 months' imprisonment. *Id.* at 3. This sentence reflects a downward variance from a recommended sentence under the Sentencing Guidelines of life imprisonment. *Id.* Defendant's estimated release date is June 29, 2037. Def.'s Mot. 4.

Prior to his conviction in 2013, defendant was convicted of federal drug trafficking crimes in 1993. Gov't's Resp. 4; Information Charging Prior Offenses 1. Defendant was sentenced to 120 months' imprisonment followed by five years of supervised release in that case. Gov't's Resp. 4. His term of supervised release ended on March 18, 2008, only months before he began trafficking drugs again. Gov't's Resp. 4.

While in prison, defendant has committed five disciplinary infractions. Gov't's Resp. 4-5. Most notably, only two months ago, on December 6, 2020, defendant received an infraction that stated he "interfered with staff and refused to adhere to an order." *Id.* at 5.

On August 5, 2020, amid the COVID-19 global pandemic, defendant submitted a request for compassionate release to the Warden of FCI-Loretto. Def.'s Mot. 2. The request was denied on August 14, 2020. Gov't's Resp. 5. In a letter dated August 11, 2020, defendant asked the Court to appoint him counsel to assist him with filing a motion for compassionate release. Def.'s Letter Dated Aug. 11, 2020. The Court referred the case to the Federal Community Defender's Office to determine whether it would seek appointment to represent defendant. Order, *United States v. Ortiz* (E.D. Pa. Sept. 2, 2020) (Document No. 710).

By letter dated December 20, 2020, defendant updated the Court on conditions at FCI-Loretto, stated he was not sure whether his attorney had filed a motion for compassionate

release, and asked the Court for any relief it could grant. On January 8, 2021, the Federal Community Defender's Office filed the pending Motion for Compassionate Release on behalf of defendant.[1] In the Motion, defendant argues his medical conditions present extraordinary and compelling circumstances warranting his early release in light of the COVID-19 pandemic. Specifically, defendant, who is fifty-three years old, suffers from Type II diabetes mellitus, for which he takes metformin and insulin daily. Def.'s Mot. 4, 16. Relatedly, he suffers from diabetic neuropathy, diabetic retinopathy, and microalbuminuria. *Id.* Defendant claims that "his condition is so advanced that it is beginning to attack his sight" as well. *Id.* He has also been diagnosed with ischemic cardiomyopathy, for which he had a cardiac catherization in January 2020, hypertension, and hyperlipidemia. *Id.* at 5. The Government reports that defendant's conditions are "appropriately managed" and that "defendant is otherwise fully ambulatory and engages in all normal activities of daily living." Gov't's Resp. Br. 7, 17.

Defendant tested positive for COVID-19 on November 30, 2020. Gov't's Resp. 7. He experienced a "mild to moderate case of the disease"—a fever, shortness of breath, a cough, malaise, headaches, and a nosebleed. *Id.* He was prescribed acetaminophen, an albuterol inhaler, and an antibiotic for suspected pneumonia. *Id.* According to defendant's medical records, he recovered from COVID-19 on December 28, 2020. Gov't's Resp. 7; Gov't's Ex. A at 1.

The Government filed a Response to the Motion for Compassionate Release on January 11, 2021. The Motion is thus ripe for decision.

---

[1] To the extent Defendant's Letter Dated December 20, 2020 requests compassionate release, the filing of the Motion for Compassionate Release by defendant's counsel moots that request.

### III.   DISCUSSION

#### A.  Applicable Law

Defendant seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018).  Section 3582(c)(1)(A)(i) permits a federal prisoner to petition a court for compassionate release for "extraordinary and compelling reasons" after first filing a request for compassionate release with the prison warden.[2]  18 U.S.C. § 3582(c)(1)(A)(i).  Generally, "extraordinary" means "[b]eyond what is usual, customary, regular, or common" and a "compelling need" is a "need so great that irreparable harm or injustice would result if it is not met."  *United States v. Rodriguez*, 451 F. Supp. 3d 392, 401. (E.D. Pa. 2020) (quoting *Extraordinary*, Black's Law Dictionary (11th ed. 2019)).  "Extraordinary and compelling reasons," for purposes of § 3582(c)(1)(A)(i), were previously defined by a policy statement in § 1B1.13 of the United States Sentencing Guidelines, which cites the (A) medical conditions, (B) age, and (C) family circumstances of the defendant and (D) "reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)," as determined by the BOP.  U.S.S.G. § 1B1.13 cmt. n.1(A)-(D).  While courts have concluded that this policy statement is no longer binding after enactment of the First Step Act, the "old policy statement provides helpful guidance" for courts applying § 3582(c)(1)(A)(i).  *United States v. Beck*, No. 13-cr-186, 2019 WL 2716505, at *6 (M.D.N.C. June 28, 2019); *see also Coleman v. United States*, No. CV 20-1769, 2020 WL 2079406, at *6 (E.D. Pa. Apr. 30, 2020) (DuBois, J.).

---

[2] Because defendant submitted a request for compassionate release with the warden of FCI-Loretto on August 5, 2020 and the request was denied on August 14, 2020, he has exhausted his administrative remedies.

The Third Circuit has held that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 954, 597 (3d Cir. 2020).  Moreover, "the existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner." *United States v. Roeder*, 807 F. App'x 157, 161 n.16 (3d Cir. 2020).  Therefore, a general fear of contracting COVID-19 alone does not satisfy the "extraordinary and compelling reasons" requirement of the statute.  *United States v. Ramirez-Ortega*, No. CR 11-251-07, 2020 WL 4805356, at *2 (E.D. Pa. Aug. 18, 2020) (DuBois, J).  However, an inmate may be able to establish extraordinary and compelling circumstances when the inmate suffers from a medical condition that the CDC has identified as a risk factor for COVID-19.  *Rodriguez*, 2020 WL 1627331, at *7.

However, "[n]ot every defendant who presents a qualifying extraordinary and compelling reason is entitled to relief under Section 3582(c)(1)(A)." *United States v. Babbitt*, No. 18-cr-384, 2020 WL 6153608, at *9 (E.D. Pa. Oct. 21, 2020).  Before granting compassionate release, a court must consider (1) whether the defendant would present a danger to the community; and (2) whether a sentence reduction would be consistent with the factors enumerated in 28 U.S.C. § 3553(a).  *Babbitt*, 2020 WL 6153608, at *9.  To determine whether a defendant would be a danger to the community, the Court considers "the nature and circumstances of the offense charged," "the history and characteristics of the person," including "the person's character, physical and mental condition, family ties, . . . community ties, past conduct, history relating to drug or alcohol abuse, [and] criminal history," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."  18 U.S.C. § 3142(g).

Then, § 3553(a) instructs the court to "impose a sentence 'sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Kimbrough v. United States*, 552 U.S. 85, 101, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007) (quoting 18 U.S.C. § 3553(a)). The § 3553(a) factors include:

> (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide punishment, deter criminal conduct and protect the public from further crimes by the defendant; (3) the kinds of sentences and sentencing ranges available; and (4) the need to avoid unwarranted sentence disparities among defendants committing similar offenses.

*Babbitt*, 2020 WL 6153608 at *10 (citing 18 U.S.C. § 3553(a)). Ultimately, compassionate release is appropriate only when there are extraordinary and compelling circumstances, the defendant's release would not pose a danger to the community, and release would be consistent with the § 3553(a) factors.

### B. Analysis

Defendant argues his health conditions—Type II diabetes mellitus and related conditions, ischemic cardiomyopathy, hypertension, and hyperlipidemia—put him at risk of suffering "severe illness or death" as a result of contracting COVID-19.[3] Def.'s Mot. 13. The Government concedes that defendant's Type II diabetes mellitus diagnosis is a COVID-19 risk factor recognized by the Centers for Disease Control and Prevention, presenting extraordinary

---

[3] Defendant's Motion for Compassionate Release, filed January 8, 2021, does not address the Government's statement that defendant contracted COVID-19 in November of 2020, suffered "mild to moderate" symptoms, and recovered in December of 2020. Gov't's Resp. 7.

6

and compelling circumstances.[4]  Gov't's Resp. 16.  The Court thus focuses its analysis on the second and third steps of the compassionate release framework.

Defendant argues he is not a danger to the community because his offenses were nonviolent, he acknowledges the seriousness of the conviction and his criminal history, "has expressed a contrite heart," and "struggles with debilitating diabetes that has caused him both issues with mobility and his sight and cardiovascular disease." Def.'s Mot. 14.  In response, the Government argues "defendant continues to present a danger to the community" due to the nature of his offenses and his criminal history.  Gov't's Resp. 19.

The Court agrees with the Government on this issue.  Although nonviolent, defendant's drug trafficking crimes are serious and dangerous to the wellbeing of society.  *See* Memorandum, *United States v. Rodriguez,* No. 11-251 (E.D Pa. February 12, 2021) (Document No. 750) (concluding Ortiz's co-defendant would pose a danger to the community upon his release based in part on the seriousness of the offenses the drug trafficking group committed) (DuBois, J.); *United States v. Santiago*, No. 15-cr-280, 2020 WL 4015245, at *4 (E.D. Pa. July 15, 2020) ("[D]efendant pleaded guilty in two separate actions before this Court for trafficking large quantities of drugs and illegally purchasing firearms. . . . These crimes are of a serious nature and underscore the danger defendant poses to the community."); *United States v. Pangelinan*, No. 17-cr-483, 2020 WL 3892961, at *3 (E.D. Pa. July 9, 2020) ("While [defendant] claims that he

---

[4] The Government attempts to limit the weight of these extraordinary and compelling circumstances by arguing that "[i]t is highly unlikely that the defendant would contract COVID-19 a second time in the near future, given that he should have antibodies which will protect him for a period of time and given that a COVID-19 vaccine has now been approved and is being administered to certain federal inmates.  In addition, the defendant's case fortunately was not severe." Gov't's Resp. 17.  The Government states that "[t]his alone is a reason to deny relief" but then acknowledges that "there is not yet scientific certainty regarding a risk of reinfection." *Id.*  The Court need not address this issue because it concludes defendant would pose a danger to the community if he were granted compassionate release and the § 3553(a) factors counsel against compassionate release in this case.

has 'changed . . . direction in his life,' he remains a serial offender who has demonstrated a consistent disregard for the law and for public safety.").

Further, defendant's criminal history of drug trafficking and disciplinary record while in prison demonstrate he poses a significant risk of recidivism. Defendant previously served ten years in prison and five years of supervised release, and he returned to drug trafficking within months of the termination of his supervised release. *See United States v. Burton*, No. 15-cr-474-3, 2020 WL 4226472, at *4 (E.D. Pa. July 23, 2020) (concluding defendant posed a danger to the community because his criminal behavior spanned two decades and "[h]e has spent a significant portion of his adult life in prison or under supervision"). Defendant has also received five disciplinary infractions while imprisoned, including one only two months ago, while he was recovering from COVID-19. *See United States v. Concepcion*, No. 02-cr-488, 2021 WL 50852, at *7 (E.D. Pa. Jan. 6, 2021) (concluding that, in light of defendant's criminal history and the fact that he "committed several disciplinary infractions while incarcerated. . . . there is no assurance that [d]efendant would be deterred from committing additional crimes if released."). Although defendant argues his medical conditions mitigate danger he might pose to the community, the Government reports defendant's conditions are well managed, and he is capable of participating in all activities of daily living. Accordingly, defendant has not shown that he would not present a danger to the community upon his release.

Defendant also argues the § 3553(a) factors counsel in favor of compassionate release on the grounds that he is a nonviolent offender, he acknowledges the seriousness of his offenses, his incarceration to date is sufficiently punitive to address his criminal behavior, further incapacitation behind bars is not necessary to deter him from further criminal conduct in light of his declining health, and he has participated in education and training courses that will allow him

to reintegrate into society. Def.'s Mot. 15-19. In response, the Government argues "defendant fails to demonstrate how release, one-third of the way through a 360-month sentence for a serious drug crime, reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense." Gov't's Resp. 20.

      The Court agrees with the Government on this issue. As explained *supra*, defendant committed serious and dangerous crimes. His sentence of 360 months' imprisonment already reflects a downward variance from a Sentencing Guidelines recommended sentence of life imprisonment. With an estimated release date of June 29, 2037, defendant has served only approximately one-third of his sentence. *See United States v. Parks*, 17-cr-296-01, 2021 WL 354413, at *7 (E.D. Pa. Feb. 2, 2021) (concluding the § 3553(a) factors counseled against compassionate release because defendant had served only approximately thirty percent of his sentence, which already reflected a downward variance from the Sentencing Guidelines). Given defendant's criminal history—and the fact that he returned to drug trafficking in 2008 shortly after completing a ten-year prison sentence for drug trafficking—defendant has not shown that ten years of imprisonment reflects the seriousness of the offense, promotes respect for the law, or provides just punishment for the offense. *See United States v. Young*, No. 06-cr-710-02, 202 WL 4925592, at *3 (E.D. Pa. Aug. 21, 2020) ("[W]here the defendant has a history of recidivating and has not served a large portion of his sentence, the § 3553(a) factors do not warrant compassionate release."). The Court thus concludes that the § 3553(a) factors counsel against compassionate release in this case.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) is denied. To the extent Defendant's Letter Dated December 20, 2020 requests compassionate release, the request is denied as moot. An appropriate order follows.